UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

LOUIS STREETER, JR.,

    Plaintiff,

v.                                                CASE NO:
                                                   HON:

MACOMB COUNTY, SHELBY TOWNSHIP,
DYLAN NAJJAR, JUSTIN GOEBEL,
ALYSSA SCIACCA, JESSE KENNEDY,
MARK GREEN, W. ASH, HASAN ARRAT,
in their individual and official capacities,

    Defendants.
_____/
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com
_____/

THERE IS NO OTHER PENDING OR RESOLVED ACTION ARISING OUT OF THE TRANSACTION OR OCCURRENCE ALLEGED IN THE COMPLAINT

**COMPLAINT AND JURY DEMAND**

    **NOW COMES** Plaintiff, by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and for his Complaint against the above-named Defendants states as follows:

1

1. Plaintiff is a resident of the Township of Shelby, County of Macomb, State of Michigan.

2. Defendant Macomb County is a municipal corporation and governmental subdivision organized and existing under the laws of the State of Michigan.

3. Defendant Shelby Township is a municipal corporation and governmental subdivision organized and existing under the laws of the State of Michigan.

4. Defendants Najjar and Goebel are and/or were police officers employed by the Shelby Township Police Department and were acting under color of law, in their individual and official capacities, and within the course and scope of their employment at all times mentioned herein.

5. Defendants Sciacca, Kennedy, Green, and Ash are and/or were employees/corrections officers of the Macomb County Jail ("MCJ") and were acting under color of law, in their individual and official capacities, and within the course and scope of their employment at all times mentioned herein.

6. Defendant Arrat was at all relevant times mentioned herein a physician who provided medical care to inmates, including but not limited to Plaintiff, at the MCJ and was acting under color of law at all times.

7. At all material times mentioned herein, all of the individual Defendants, in their individual and official capacities, were acting under color of law and within the course and scope of their employment.

8. All events giving rise to this lawsuit occurred in the County of Macomb, State of Michigan.

9. This lawsuit arises out of Defendants' violations of Plaintiff's federal Fourteenth Amendment constitutional rights and consequently, Plaintiff has a viable claim for damages under 42 U.S.C. § 1983. Plaintiff also has viable state law claims for which this Court has supplemental jurisdiction.

10. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1331 [federal question] and 28 U.S.C. § 1343 [civil rights].

11. That the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), not including interest, costs, and attorney fees.

## **FACTS**

12. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

13. On or about August 29, 2020, shortly before midnight, officers from the Shelby Township Police Department arrived at Plaintiff's residence due to a domestic issue involving Plaintiff and a male acquaintance.

14. Plaintiff had consumed alcohol prior to the subsequent encounter.

15. Defendant Najjar advised Plaintiff he was being arrested for domestic violence and Defendant Goebel handcuffed Plaintiff in an unnecessarily tight manner.

16. After Plaintiff was put in the rear of the squad car, he complained that the handcuffs were too tight and that he could not move; but despite these complaints, Defendant Najjar ignored Plaintiff.

17. Defendant Najjar transported Plaintiff to the MCJ.

18. During Plaintiff's transport to the MCJ, Plaintiff complained that the handcuffs were to tight, complained of being in pain, and grimaced in pain; however, Defendant Najjar ignored those complaints, and instead, even turned up the radio volume in the squad car so as to ignore and not hear Plaintiffs complaints.

19. Upon arrival at the MCJ garage, Plaintiff and Defendant Najjar were greeted by MCJ employees, and Plaintiff again immediately complained about the handcuffs and circulation problems, as well as being half blind; however, once again, his complaints were ignored.

20. In the early morning hours of August 30, 2020, Plaintiff was booked and/or processed through the MCJ.

21. At the time of the incident complained of, Defendants were aware and/or should have been aware that Plaintiff was 68 years of age; suffered from partial blindness; had a history of joint, balance, and dizziness issues; his movement was restricted and compromised; and he also suffered from chronic foot pain.

22. Upon information and belief, Defendant Sciacia was the initial classification/screening officer responsible for ensuring that Plaintiff was assigned

4

to a low bunk given his intoxication and health issues necessitating his need and assurance that he obtained a low bunk detail; but this was not done, nor did she ensure that it was in fact done.

23. At approximately 10:17 a.m. on August 30, 2020, Defendant Kennedy moved and assigned Plaintiff to Holding 1-4, and despite Plaintiff's known age and fragile medical condition, made no efforts to ensure Plaintiff was assigned to and/or given a low bunk.

24. On or about August 30, 2020 at 11:23 a.m., Plaintiff's medical screening by MCJ medical staff was completed and was signed off by Defendant W. Ash; who was therefore alerted to Plaintiff's various medical conditions necessitating a low bunk but made no efforts to ensure that this accommodation was in fact met.

25. During the August 30, 2020 medical screening an affirmative indication was made that Plaintiff's movement was restricted or compromised and it was known that Plaintiff was blind in his left eye due to glaucoma. Additionally, it was noted and Defendants were therefore aware or should have been aware that Plaintiff suffered from chronic pain and had been or was being treated for various medical conditions including but not limited to a seizure disorder.

26. At 11:28 a.m. on August 30, 2020 a medical note by J. Kneisler, RN noted that "pt had hx of beer and vodka use daily and Norco four times daily for chronic pain."

27.     On or about 12:08 p.m. on August 30, 2020, MCJ medical staff faxed a "Memo to Jail Command" which was copied to Classification, Jail Command and the Duty Officer, which indicated that Plaintiff was to be placed into a Detoxification Unit and was to be housed in a "Lower Bunk."

28.     On or about 8:03 p.m. on August 30, 2020, Defendant Green moved and/or had Plaintiff moved to a different cell, but failed to ensure that Plaintiff had a low bunk detail, despite his knowledge that Plaintiff required same.

29.     On August 30, 2020, MCJ medical staff faxed another "Memo to Jail Command" which was copied to Classification, Jail Command and the Duty Officer, requiring that Plaintiff be assigned to a "lower bunk-no stairs" until his release; however, MCJ staff and the MCJ Defendants ignored this.

30.     Despite the obvious and clear necessity that Plaintiff be given a low bunk, Defendants Sciacca, Kennedy, Green, and Ash moved Plaintiff and/or had Plaintiff moved within the MCJ without ensuring that he had a low bunk; and otherwise ignored Plaintiff's known age and medical conditions requiring a lower bunk detail and otherwise completely failed to ensure Plaintiff got a low bunk.

31.     At approximately 9:30 p.m. on August 30, 2020, Plaintiff was getting down from the top bunk in order to go to the bathroom and fell onto his right ankle causing significant pain and injury such that there was immediate swelling and he was unable to bear weight on same.

6

32. That Plaintiff continuously complained of foot pain, swelling, and difficulty with ambulation, but his concerns and complaints fell on deaf ears.

33. On August 30, 2020, an x-ray of Plaintiff's ankle was ordered, and an x-ray was performed on August 31, 2020.

34. On August 31, 2020, it was noticed that Plaintiff had a difficult time walking with a walker, and swelling of the foot and ankle was observed.

35. As of 9:24 a.m. on August 31, 2020, Plaintiff was housed in the medical unit because of the right ankle/foot injury which was caused by Plaintiff getting out of a top bunk, landing on his right foot, and injuring it. Plaintiff's right foot was notably swollen with ecchymosis.

36. On or about August 31, 2020 Defendant Arrat met with Plaintiff and asked Plaintiff what had happened; to which Plaintiff responded and also showed Defendant Arrat his foot which was swollen to approximately twice its normal size.

37. During the August 31 interaction, Defendant Arrat asked Plaintiff if he had foot gout, to which Plaintiff responded in the negative.

38. Also during the August 31 encounter, Plaintiff advised Defendant Arrat that he had medical insurance and requested to be treated at Henry Ford Hospital because of his excruciating pain; but the request was denied. Additionally, Defendant Arrat could not give him a wheelchair but would only give Plaintiff a walker.

39. On or about September 1, 2020, Defendant Arrat noted that Plaintiff was unable to walk on his foot; but yet he removed the wheelchair that Plaintiff was able to get from Plaintiff's room; forcing Plaintiff to bear weight on an excruciatingly painful foot/ankle.

40. On September 2, 2020, medical staff, including but not limited to Defendant Arrat, met with Plaintiff who was again forced to use a walker despite Plaintiff's very slow, limited, unsteady, and painful gate. After the evaluation, Plaintiff lost his footing and balance and fell.

41. Defendant Arrat compelled Plaintiff to use a walker despite knowing his increased age, history of dizziness and balance issues, and obvious pain and injury to his ankle, as well as his difficulty in bearing weight on his foot/ankle.

42. On or about September 4, 2020, Defendant Arrat again met with Plaintiff; and he noted that Plaintiff had the "wheelchair again in his room" and noted that Plaintiff was "still showing weak lower extremities;" however, Defendant Arrat still not give Plaintiff a wheelchair to use.

43. As of September 4, 2020, Plaintiff was cleared from medical but was not allowed to use a wheelchair or crutches by Defendant Arrat; but was only given a walker to use.

44. After Plaintiff's foot/ankle injury, swelling with red/purplish ecchymosis on his toes and lateral foot appeared.

8

45. After his ankle injury and being forced to walk on his injured foot/ankle and without the use of a wheelchair, Plaintiff fell on numerous occasions because of the pain, swelling, and inability to ambulate.

46. As of September 13, 2020, Plaintiff's right foot was warm to the touch, had red and purplish discoloration, had 3+ pitting edema from the toes to the mid-calf, and pedal pulse was absent.

47. Despite Plaintiff's requests for a referral to a hospital due to the excruciating and ongoing pain in his foot/ankle, Defendant Arrat denied such requests for no reasonable reason.

48. Defendant Arrat said that Plaintiff's foot/ankle problems was merely "foot gout," but did not have any testing undertaken to determine Plaintiff's uric acid levels or other reasons for Plaintiff's injuries.

49. Plaintiff also advised Defendant Arrat that he had trouble showering on one foot, but no accommodations to aid in showering was given to Plaintiff.

50. Plaintiff also complained to Defendant Arrat that the distance he was forced to walk to get his medications caused immense pain in his foot/ankle and requested that the medications be delivered to his cell; but this reasonable request was denied.

51. Whenever Plaintiff spoke with Defendant Arrat about the pain, swelling, and continuing issues with his foot/ankle, Defendant Arrat would simply advise Plaintiff to walk it off despite the significant pain it caused.

52. Plaintiff was released from the MCJ on or about September 15, 2020.

53. Not long after Plaintiffs' release from the MCJ, he went to the hospital because of the continuing right foot pain, and it was discovered that Plaintiff had an acute highly comminuted multipart fracture of the calcaneus with subtalar and calcaneocuboid intra-articular extension and acute chip fracture identified through the posterior lateral aspect of the talus.

54. On or about September 21, 2020, the criminal charge of felonious assault was dismissed.

### COUNT I
### VIOLATION OF THE FOURTEENTH AMENDMENT--42 U.S.C. §1983
### DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED AS TO ALL DEFENDANTS

55. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

56. Plaintiff's constitutionally protected rights that Defendants violated include but are not limited to the following:

   a. Plaintiff's right to liberty protected by the substantive component of the Due Process Clause of the Fourteenth Amendment which includes but is not limited to personal safety, health, freedom from captivity, and protection; and

   b. His right to fair and equal treatment.

57. Defendants acted under color of law and their conduct showed intentional, outrageous, reckless, and deliberate indifference to and deliberate disregard of Plaintiff's clearly established constitutional rights.

58. Defendants' actions in detaining Plaintiff without, among other things, ensuring Plaintiff received and obtained a lower bunk detail given Plaintiff's known and obvious need for same, illustrated their deliberate indifference to Plaintiff and was a deprivation of Plaintiff's constitutionally protected rights.

59. Defendants violated Plaintiff's federally protected rights by failing to properly or adequately attend to Plaintiff's severe and obvious medical needs and his need for reasonable accommodations while in the MCJ given his age and medical conditions; thereby exhibiting deliberate indifference to Plaintiff.

60. Plaintiff had a serious medical and person needs (which was obvious and well documented); which Defendants knew about, but were deliberately indifferent to.

61. Defendants' actions and/or inactions were intentional, deliberately indifferent, and violative of Plaintiff's clearly established constitutional rights.

62. Defendants' failure and/or refusal to accommodate Plaintiff's documented medical needs, and their failure to ensure that elementary precautions were undertaken for Plaintiff's various health and physical conditions, all exhibit Defendants' deliberate indifference to Plaintiff's serious medical and physical needs.

63. Defendants acted wantonly and/or with deliberate indifference to Plaintiff.

64. Defendants' actions and/or inactions were a direct and proximate cause of the deprivation of Plaintiff's constitutional rights.

65. The facts as set forth in the preceding paragraphs constitute a violation of Plaintiff's Fourteenth Amendment rights; and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages, as well as costs, interest, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in his favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,00.00), not including attorney fees, costs, or interest.

## COUNT II
## GROSS NEGLIGENCE
## AS TO ALL DEFENDANTS

66. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

67. Defendants owed a duty to Plaintiff not to engage in activities or actions that would endanger or cause harm to individuals.

68. Defendants breached their duties by acting indifferently and/or in a grossly negligent without regard to Plaintiff's health, safety, and/or welfare.

69. Defendants' conduct was so reckless as to demonstrate a substantial lack of concern for whether an injury resulted to Plaintiff.

70. Defendants' grossly negligent conduct was the most immediate, efficient, and direct cause preceding Plaintiff's injuries.

71. Defendants knew or should have known that by breaching these duties, harm would come to Plaintiff.

72. That according to MCL 691.1407, the breach of Defendants' duties to exercise reasonable care was reckless and amounts to gross negligence.

73. That as a direct and proximate result of Defendants' indifferent/grossly negligent acts and/or omissions, Plaintiff suffered injuries and damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), not including costs, interest, and attorney fees.

### COUNT III
### ASSAULT AND BATTERY
### AS TO DEFENDANT GOEBEL

74. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

75. Defendant's actions were not undertaken in good faith and were not discretionary; but were otherwise undertaken with malice.

76. At all material times herein, Defendant threatened and/or caused Plaintiff to be threatened with involuntary, unnecessary, and/or unreasonable physical contact.

77.    At all material times herein, the physical contact and/or threat of physical contact referred to herein was inflicted upon Plaintiff by Defendant.

78.    That the physical contact was unnecessary, unreasonable, and/or excessive; and furthermore, the physical contact was without probable cause and/or any legal justification whatsoever.

79.    As a direct and proximate result of the assaults and batteries inflicted upon Plaintiff as described herein, Plaintiff sustained injuries and damages.

80.    Defendant's actions were so egregious and so outrageous, that Plaintiff's damages were heightened and made more severe; thus Plaintiff is entitled to exemplary damages.

**WHEREFORE,** Plaintiff respectfully requests that this Honorable Court enter an award in Plaintiff's favor in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), not including interest, attorney fees, and costs.

## COUNT IV
## DEFENDANT MACOMB COUNTY
## CONSTITUTIONAL VIOLATIONS

81.    Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

82.    Defendant Macomb County permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights as complained of herein.

83. These customs, practices, and/or policies included but were not limited to the following:

    a. Failing to adequately train and/or supervise its employees so as to prevent violations of citizens' constitutional rights;

    b. Failing to adequately train and/or supervise its employees regarding proper safety protocols and/or procedures for inmates; and

    c. Failing to adequately supervise, review, and/or discipline employees whom Defendant Macomb County knew or should have known were violating or were prone to violate citizen's constitutional rights; thereby permitting and/or encouraging its employees to engage in unlawful conduct.

84. Defendant's conduct was so reckless so as to demonstrate deliberate indifference for whether an injury resulted.

85. Defendant's acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries and damages.

86. The facts in the preceding paragraphs constitute a violation of Plaintiff's constitutional rights; and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages, costs, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** plaintiff respectfully requests that this Honorable Court enter an award in favor of Plaintiff and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

## COUNT V
## DEFENDANT SHELBY TOWNSHIP
## CONSTITUTIONAL VIOLATIONS

87. Plaintiff realleges and incorporates by reference each and every paragraph of this Complaint as though fully set forth herein.

88. Defendant Shelby Township permitted customs, practices, and/or policies which resulted in the violations of Plaintiff's constitutional rights as complained of herein.

83. These customs, practices, and/or policies included but were not limited to the following:

    a. Failing to adequately train and/or supervise its employees so as to prevent violations of citizens' constitutional rights;

    b. Failing to adequately train and/or supervise its officers regarding proper safety protocols and/or procedures for those under their care;

    c. Failing to adequately train and/or supervise its officers regarding proper handcuffing procedures so as not to cause harm to those under their care;

16

  d. Failing to adequately train and/or supervise its officers regarding appropriately and adequately responding to and/or addressing citizen complaints; and

  e. Failing to adequately supervise, review, and/or discipline employees whom Defendant Shelby Township knew or should have known were violating or were prone to violate citizen's constitutional rights; thereby permitting and/or encouraging its employees to engage in unlawful conduct.

84. Defendant's conduct was so reckless so as to demonstrate deliberate indifference for whether an injury resulted.

85. Defendant's acts and/or indifference and/or omissions were the direct and proximate cause of Plaintiff's injuries and damages.

86. The facts in the preceding paragraphs constitute a violation of Plaintiff's constitutional rights; and pursuant to 42 U.S.C. § 1983, Plaintiff has a viable claim for compensatory and punitive damages, costs, and attorney fees as set forth in 42 U.S.C. § 1988.

**WHEREFORE,** plaintiff respectfully requests that this Honorable Court enter an award in favor of Plaintiff and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney fees.

        Respectfully Submitted,

        CHRISTOPHER TRAINOR & ASSOCIATES

        **/s/ Shawn C. Cabot**
        CHRISTOPHER J. TRAINOR (P42449)
        SHAWN C. CABOT (P64021)
        KRYSTINA R. DOSS (P77365)
        Attorneys for Plaintiff
        9750 Highland Road
        White Lake, MI  48386
        (248) 886-8650
        shawn.cabot@cjtrainor.com

Dated:  February 11, 2022
SCC/

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

LOUIS STREETER, JR.,

      Plaintiff,

v.                                                                                                                          CASE NO:
                                        HON:

MACOMB COUNTY, SHELBY TOWNSHIP,
DYLAN NAJJAR, JUSTIN GOEBEL,
ALYSSA SCIACCA, JESSE KENNEDY,
MARK GREEN, W. ASH, HASAN ARRAT,
in their individual and official capacities,

      Defendants.
_____/
CHRISTOPHER TRAINOR & ASSOCIATES
CHRISTOPHER J. TRAINOR (P42449)
SHAWN C. CABOT (P64021)
KRYSTINA R. DOSS (P77365)
Attorneys for Plaintiff
9750 Highland Road
White Lake, MI  48386
(248) 886-8650
shawn.cabot@cjtrainor.com
_____/

**DEMAND FOR TRIAL BY JURY**

**NOW COMES** Plaintiff, by and through his attorneys, CHRISTOPHER TRAINOR & ASSOCIATES, and hereby makes a demand for a trial by jury in the above-captioned matter.

        Respectfully Submitted,

        CHRISTOPHER TRAINOR & ASSOCIATES


        **/s/ Shawn C. Cabot**
        CHRISTOPHER J. TRAINOR (P42449)
        SHAWN C. CABOT (P64021)
        KRYSTINA R. DOSS (P77365)
        Attorneys for Plaintiff
        9750 Highland Road
        White Lake, MI  48386
        (248) 886-8650
        shawn.cabot@cjtrainor.com

Dated:  February 11, 2022
SCC/