UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS STREETER JR.,

    Plaintiff,

v.

MACOMB COUNTY, et al.,

    Defendants.

Case No. 22-cv-10287
Linda V. Parker

_____/

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS MACOMB COUNTY, JESSE KENNEDY, AND MARK GREEN (ECF NO. 47)

On February 11, 2022, Plaintiff Louis Streeter Jr. filed this lawsuit against a number of defendants asserting claims arising from his fall from a top bunk and injury to his right foot during his incarceration at the Macomb County Jail. Specifically, Mr. Streeter alleges deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and gross negligence.[1] At this stage of the litigation, all Defendants have been dismissed except Macomb County, Jail Corrections Officers Jesse Kennedy and Mark Green, and Hasan Arrat, M.D.

---

[1] Mr. Streeter also alleged assault and battery against Defendant Justin Goebel, a Shelby Township police officer, who has since been dismissed. (ECF No. 45.) That claim arose from Mr. Streeter's arrest, which led to his detention at the Macomb County Jail.

1

The matter is currently before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) filed by Macomb County and Officers Kennedy and Green (hereafter collectively "Defendants"). (ECF No. 47.) The motion has been fully briefed. (ECF Nos. 52, 54.) Findings the facts and legal arguments adequately presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting Defendants' motion.

I.    **Standard of Review**

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's

2

evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

## II. Factual Background

Early in the morning hours of August 30, 2020, Shelby Township police officers arrested Mr. Streeter, who was 68 years old at the time, for domestic violence. (*See* ECF No. 52-2.) The arresting officers believed Mr. Streeter was highly intoxicated. (*See id.* at PageID. 1111; ECF No. 52-4 at PageID. 1192; ECF No. 52-5 at PageID. 1203-04.) The officers handcuffed Mr. Streeter and transported him to the Macomb County Jail ("Jail"). (ECF No. 52-5 at PageID. 1112; ECF No. 52-3 at PageID. 1168.)

Due to Mr. Streeter's behavior before arriving at the Jail, he was placed in a restraint chair when he arrived (ECF No. 52-3 at PageID. 1172); and at 12:50 a.m., he was assigned to Detox Cell 01, which is a single person detox cell in the booking area (ECF No. 47-5 at PageID. 723; ECF No. 52-7 at PageID. 1227). Some time thereafter, but before 6:30 a.m., Mr. Streeter had calmed down and so he was removed from the restraint chair, given a bagged lunch as he was hungry, and a couple of blankets. (ECF No. 47-4 at PageID. 691-92, 698.) Mr. Streeter remained in Detox Cell 01 until 10:17 a.m., when Officer Kennedy moved him to Booking Holding Cell 03 and, shortly thereafter, Booking Holding Cell 04. (ECF

3

No. 52-7 at PageID. 1227.) The Jail's holding cells have only low bunks or benches. (ECF No. 47-4 at PageID. 689; ECF No. 47-8.)

A Jail nurse subsequently conducted an initial medical screening of Mr. Streeter and designated him to a detox unit and lower bunk. (ECF No. 52-15 at PageID. 1292-93; ECF No. 52-13.) The nurse completed a Memo to Jail Command with these instructions. (*Id.*) The Memo to Jail Command was faxed to jail classification and the duty officers. (ECF No. 52-13; ECF No. 52-11 at PageID. 1270.)

At 8:03 p.m. on August 30, two male corrections officers removed Mr. Streeter from Booking Holding Cell 04 and escorted him, along with about 10 other inmates, to different cells in Lower D Block. (ECF No. 52-7; ECF No. 47-4 at PageID. 689-90; ECF No. 47-7 at PageID. 757.) Mr. Streeter was placed in Lower D Block Cell D2, which has upper and lower two-man bunks. (ECF No. 52-7; ECF No. 47-4 at PageID. 756.) Officer Green signed the Jail's record reflecting this move, although he does not recall whether he moved Mr. Streeter or simply completed the log. (*Id.*; ECF No. 47-10 at PageID. 851.)

At his deposition in this matter, Mr. Streeter indicated that he could not read the names of the officers on their badges due to his extremely bad vision. (ECF No. 47-4 at PageID. 756.) However, he described one of the officers who moved him as a "Caucasian" male, "[s]ix foot, a little stocky," wearing glasses, and

4

"maybe light brown hair, no facial hair[.]" (*Id.* at PageID. 757.) Officer Green describes himself as "6'7" tall, . . . of a mixed race, . . . and . . . trim for [his] height." (ECF No. 54-4 at PageID. 1608 ¶ 3.) He is bald and wears glasses. (ECF No. 47-10 at PageID. 856.) Officer Green "identif[ies] as a Black male." (ECF No. 54-4 at PageID. 1608 ¶ 3.)

When Mr. Streeter was brought to Lower D Block Cell D2, he asked the corrections officer described above: "You know I'm supposed to be in the bottom bunk, right?" (*Id.* at PageID. 757.) The corrections officer responded, "yeah, I'll be back, I'll be back to straighten that out . . .." (*Id.*)

After entering the cell, Mr. Streeter sat at one of the picnic tables in the middle of the cell block. (ECF No. 47-4 at PageID 757.) After a while, but some time before 9:02 p.m., Mr. Streeter climbed onto the top of one of the bunks to lay down because he was exhausted. (*Id.*) At around 9:02 p.m., Mr. Streeter fell from the bunk and injured his right foot. (*Id.* at PageID. 757-58; ECF No. 47-10 at PageID. 855.) Another inmate pushed the cell's emergency button and reported that an inmate had fallen off his bunk. (ECF No. 47-10 at PageID 855.) Officer Green responded to the call and went to Cell D2 to assess the situation. (*Id.*; *see also* ECF No. 47-11.) Officer Green then obtained a wheelchair, returned to Cell D2, assisted Mr. Streeter into the wheelchair, and then took him to the Jail's hospital. (*Id.*; ECF No. 47-7 at PageID. 758.)

5

Mr. Streeter then was seen by Jail medical staff. (ECF No. 47-7 at PageID. 759.) On September 22, 2020, after he was released from the Jail and then house arrest, Mr. Streeter went to the hospital complaining of continued pain and problems with his right foot. (ECF No. 52-30.) Testing revealed an "acute, comminuted and impacted multipart fracture of the calcaneus with subtalar and calcaneocuboid intra-articular extension. Acute chip fracture identified through the posteriour." (*Id*. at PageID. 1394.) Mr. Streeter subsequently treated with physicians but continued to experience right foot pain for some time. (ECF Nos. 52-31 to 53-34.)

### III. Applicable Law & Analysis

#### A. Deliberate Indifference

Mr. Streeter was a pretrial detainee when he was injured at the Jail on August 30, 2020. The Fourteenth Amendment protects pretrial detainees from a serious risk of harm, similar to the Eighth Amendment's protections for convicted prisoners. *See Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (citations omitted).

At the time of Mr. Streeter's injury, the Sixth Circuit evaluated Fourteenth Amendment claims alleging deliberate indifference to an inmate's serious risk of harm using the same two-prong test as an Eighth Amendment claim brought by a convicted prisoner. *See id.* at 927. Under this evaluation, the plaintiff was

6

required to demonstrate that he or she "faced a 'substantial risk of serious harm'" (the "objective" prong) and that the defendant "acted with 'deliberate indifference' to this risk[]" (the "subjective" prong). *Id*. at 926-27 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). While the Sixth Circuit subsequently modified the subjective prong for Fourteenth Amendment claims in 2023, *see Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 316 (6th Cir. 2023), it applies *Farmer*'s standard to claims arising prior to that date, *Lawler*, 93 F.4th at 928 ("Given the date of the conduct at issue, we instead must apply *Farmer*'s standards.").

The objective prong "generally requires inmates to show that they faced a 'substantial risk of serious harm' before they suffered an injury." *Id*. (quoting *Farmer*, 511 U.S. at 834). "When this substantial risk of serious harm arises from a physical or mental impairment, . . . 'serious medical needs' can satisfy this objective element." *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Under *Farmer*, the subjective prong requires the inmate to show that the defendant "knew of the facts creating the substantial risk of serious harm[,] . . . believed that this substantial risk existed . . . [a]nd . . . 'responded' to the risk in an unreasonable way." *Id*. at 929 (citing *Farmer*, 511 U.S. at 837, 844). Stated more succinctly, the question asked is "[d]id the official know of and disregard the serious medical need?" *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021) (citation omitted). The defendant must have "cause[d] the harm with a

7

sufficiently culpable mental state—in this context, criminal recklessness." *Id.* (citing *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)). The defendant must have "act[ed] with more than mere negligence[.]" *Santiago*, 734 F.3d at 591 (citing *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005)).

### i. Officer Kennedy

Defendants argue that Officer Kennedy is entitled to summary judgment because he was not personally involved in moving Mr. Streeter to a cell with upper bunks or responding when he fell from the upper bunk. While Officer Kennedy moved Mr. Streeter from the detox holding cell to a regular holding cell, none of the holding cells had upper bunks. Defendants argue that Officer Kennedy's involvement with Mr. Streeter ended there. His work shift ended hours before Mr. Streeter was moved to Lower D Block, placed in a cell with lower and upper bunks, and fell after climbing into an upper bunk.[2] (*See* ECF No. 47-3 at PageID. 659; ECF No. 54-2 at PageID. 1600.) Mr. Streeter fails to present evidence to show otherwise.

To demonstrate an official's liability under § 1983, the plaintiff must demonstrate his or her personal involvement in the alleged unconstitutional

---

[2] At the time of his deposition in this matter, Officer Kennedy did not recall his work schedule during the relevant dates. (*See* ECF No. 54-2 at PageID. 1600 ¶ 5.) He subsequently reviewed the schedule, which indicated that he worked the midnight shift beginning at 11 p.m. on August 29 until 7:00 a.m. on August 30, and then the morning shift on August 30 from 7:00 a.m. until 3:00 p.m. (*Id.*)

conduct. *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)) ("Each defendant's liability must be assessed individually based on his own actions."). Mr. Streeter fails to show that Officer Kennedy was involved in placing him in a cell with upper bunks, thereby with deliberate indifference to any serious risk of harm to Mr. Streeter by doing so.³ He is entitled to summary judgment.

### ii. Officer Green

Defendants argue that there also is insufficient evidence to show that Officer Green was the corrections officer who moved Mr. Streeter to the D-block cell and received Mr. Streeter's complaint that he needed a lower bunk. But even if there is an issue of fact with respect to Officer Green's involvement, Defendants assert that the evidence does not show his recklessness or a failure to act in the face of an obvious medical need. Mr. Streeter's indication that he needed a lower bunk, Defendants maintain, did not convey a need for immediate medical assistance. Defendants further maintain that Officer Green's purported response does not demonstrate deliberate and reckless disregard of a high risk of harm to Mr.

---

³ Mr. Streeter argues in his response brief that Officer Kennedy was personally involved in moving him out of a detox cell and into a general holding cell. (ECF No. 52 at PageID. 1085.) However, that conduct was not the cause of the injury at issue in this lawsuit. Further, as Correctional Sergeant William Ash explained, except for the detox cells in the holding area which are not designed to serve as long-term placement, inmates placed on detox are placed in regular cells but on detox protocol. (ECF No. 47-4 at PageID. 698.)

9

Streeter. The Court finds a genuine issue of material fact relevant to Defendants' first argument but concludes that Officer Green is entitled to summary judgment based on their second argument.

Mr. Streeter has not specifically identified Officer Green as the officer who moved him to Lower D Block Cell 02 or who Mr. Streeter told of his need for a lower bunk. Nevertheless, a reasonable juror could conclude that it was Officer Green from Mr. Streeter's description of the officer. Officer Green is at least six feet tall, wears glasses, and presumably has no facial hair. Mr. Streeter only recalled that the officer *might* have had light brown hair. Officer Green's assessment that he is trim for his height does not eliminate the possibility that he is—or could be viewed by others—as stocky. Lastly, while Mr. Streeter testified that the officer was Caucasian and Officer Green states that he "identif[ies] as a Black male," Defendants curiously have not offered a photograph of Officer Green to assess whether he could have been mistaken as Caucasian.

Assuming the need for a lower bunk was a serious medical need, Mr. Streeter fails to show that Officer Green was deliberately indifferent to that need. Mr. Streeter acknowledges that when he told Officer Green he was supposed to be in a bottom bunk, Officer Green responded "yeah, I'll be back, I'll be back to straighten that out." (*See* ECF No. 52 at PageID. 1079; ECF No. 47-7 at PageID. 757.) Officer Green was unaware that Mr. Streeter chose not to wait for the matter

to be straightened out and, within the hour of being moved to the cell, would decide to climb into an upper bunk.  Further, there is no evidence suggesting that Officer Green was aware that there were no bottom bunks available for Mr. Streeter.  And, as Mr. Streeter fell from an upper bunk within an hour of being placed in the cell, there is no way to know if Officer Green would have returned and made sure Mr. Streeter had a lower bunk before lights out.  Notably, Mr. Streeter did not inquire again about his lower bunk detail even though corrections officers performed two security rounds through D block and an officer brought another inmate to Mr. Streeter's cell within the one-hour period between him being placed there and his fall from the top bunk.  (*See* ECF No. 54-4 at PageID. 1608 ¶ 6; *id.* at PageID. 1609-10.)

A reasonable juror could not find, based on the record evidence, that Officer Green acted or failed to act in a manner demonstrating deliberate indifference toward an excessive risk of harm to Mr. Streeter.  Officer Green, therefore, is entitled to summary judgment on Mr. Streeter's deliberate indifference claim.

**B.    Gross Negligence**

Gross negligence is not an independent cause of action in Michigan.  Instead, the phrase is a term of art which provides an exception to Michigan's governmental tort liability act ("GTLA").  The GTLA grants government

employees immunity from tort liability so long as the employee's "conduct does not amount to gross negligence." Mich. Comp. Laws § 691.1407(2)(c).

The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id*. § 691.1407(8)(a). "[G]ross negligence is 'akin to willful, wanton, or reckless misconduct.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quoting *Dedes v. Asch*, 521 N.W.2d 488, 493 (Mich. 1994)). "Evidence of ordinary negligence" is insufficient. *Id*. (quoting *Maiden v. Rozwood*, 597 N.W.2d 817, 824 (Mich. 1999)) (brackets omitted).

The defendant's alleged misconduct also must be "the proximate cause" of the plaintiff's injury. *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 766 (6th Cir. 2024) (quoting Mich. Comp. Laws § 691.1407(2)(c)). The Michigan Supreme Court has interpreted this to mean that the "defendant's action must be 'the one most immediate, efficient, and direct cause of the injury or damage, i.e., *the* proximate cause.'" *Id*. at 766-67 (quoting *Robinson v. City of Detroit*, 613 N.W.2d 307, 319 (Mich. 2000)).

For the reasons discussed in the preceding section, a reasonable juror could not conclude that Officer Green's conduct in response to Mr. Streeter's need for a lower bunk was willful, wanton, or reckless. Moreover, a reasonable juror could not conclude that Officer Green's conduct was *the* proximate cause of Mr.

12

Streeter's injury. Instead, the one most immediate cause was Mr. Streeter's decision to climb into the upper bunk without waiting for Officer Green to "straighten out" the issue.

### C. Macomb County's Liability

Mr. Streeter claims that Macomb County is liable for the corrections officers' violation of his constitutional rights due to a failure to train and supervise jail staff.

A municipality is not liable for a civil rights violation simply due to an "injury inflicted solely by its employees or agents." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id*. at 691; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citations omitted). Instead, to prevail on a § 1983 claim against a municipality, the plaintiff must show that the alleged federal violation occurred because of a municipal "policy" or "custom." *Monell*, 436 U.S. at 691.

The Court has found no constitutional harm inflicted upon Mr. Streeter. In that instance, there can be no municipal liability. *Winkler v. Madison Cnty.*, 893 F.3d 877, 900 (6th Cir. 2018) (quoting *Epps v. Lauderdale Cnty.*, 45 F. App'x 332, 334 (6th Cir. 2002)) ("When no constitutional harm has been inflicted upon a

13

victim, damages may not be awarded against a municipality"); *Shreve v. Franklin Cnty.*, 743 F.3d 126, 138 (6th Cir. 2014) ("Because we conclude that Reed suffered no violation of his constitutional rights, Reed's claims against Franklin County fail."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."); *see also Heller*, 475 U.S. at 799 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Macomb County, therefore, is entitled to summary judgment with respect to Mr. Streeter's § 1983 claim.

### IV.   Conclusion

For the reasons set forth above, the Court concludes that Macomb County and Officers Kennedy and Green are entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 47) is **GRANTED** and Defendants Macomb County, Kennedy, and Green are **TERMINATED AS PARTIES** to this action.

Date:  September 6, 2024            s/LINDA V. PARKER
                                    UNITED STATES DISTRICT JUDGE